**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FIAZ AFZAL,** *et al* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-86** |
| | : | |
| **AMERICAN BOARD OF INTERNAL** | : | |
| **MEDICINE** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                    **January 20, 2022**

Doctors Fiaz Afzal of Canada and his spouse Shahida Shuja of Texas sue the American Board of Internal Medicine seeking $100,000 in damages and an order directing the Board to allow Dr. Afzal to take a new assessment test to become Board certified in internal medicine. The Doctors invoke our limited jurisdiction by arguing the Board violated Dr. Afzal's civil rights by requiring him to take one version of an exam when other physicians who are already Board certified are permitted to take another version.[1]   The Doctors allege the Board's different tests for differently situated doctors based on their present certification status discriminates against Dr. Afzal because he is not presently certified and therefore must take a more difficult exam. They allege the more difficult exam disadvantages "Black Brown" doctors.  We must dismiss the Doctors' Complaint for failing to state a claim, but we grant them leave to timely amend if they can state a claim within our limited subject matter jurisdiction.

## I.      Alleged pro se facts

The Board now permits physicians who are already Board certified to take a new assessment called the Longitudinal Knowledge Assessment with more favorable "key features" to test-takers.[2]   But if a physician like Dr. Afzal is seeking a new Board certification, the physician must take a different test.  The Doctors characterize this different test as the "old way

of testing" which does not contain these favorable "key features," and allegedly disadvantages "Black Brown doctors" who tend to score "significantly lower than their white peers." [3]

The Board also has a "history of discrimination" against Dr. Afzal, including mixing up his results with another candidate's results in 1996 but refusing to acknowledge it,[4] canceling his test in 2016 due to a criminal conviction he purports had already been expunged,[5] and not providing him extra time during a test in 2019 when the fire alarm went off and he lost test-taking time.[6] The Board most recently refused Dr. Afzal's request to sit for examination in 2020 because his Board eligibility ended in 2019.[7] The Doctors also challenge the Board's function in the medical field, alleging it acts outside of its authority and/or with no authority in imposing certain requirements on its applicants to become Board certified.[8]

## II.    Analysis

The Doctors allege the Board has an "unconstitutional policy of discrimination" and is discriminating and retaliating against Dr. Afzal by not allowing him to take the new exam with "favorable features."[9] They allege the Board's "policy of expiration of eligibility of physician Exhibit 4 to take certifying exam violates [Dr. Afzal's] constitutional rights to be treated equally and fairly."[10] Dr. Shuja alleges she has been harmed economically because her husband cannot obtain Board certification and thus, not work.[11] They seek $100,000 in compensation and an order requiring the Board to allow Dr. Afzal to take the exam offered to Board certified physicians.[12] We liberally construe the Doctors' Complaint as seeking redress for alleged constitutional violations – including denial of equal protection under the Fourteenth Amendment.[13] But the Doctors fail to state a claim against the Board because they fail to allege the Board is a state actor possibly responsible for depriving civil rights.

Having granted Drs. Afzal and Shuja leave to proceed *in forma pauperis*, Congress directs we dismiss a claim filed without paying fees which we find frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[14]   When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B)(ii), we apply the same standard used under Federal Rule of Civil Procedure 12(b)(6).[15]   We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiffs to determine whether they state a claim for relief plausible on its face.[16]   We must be "mindful of our 'obligation to liberally construe a pro se litigant's pleadings …'"[17]   We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[18]   But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."[19]

Congress provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted …."[20] Congress does not confer rights upon a plaintiff through Section 1983.   Rather, the civil rights law is the vehicle used to bring federal constitutional claims in federal court.   To proceed, Drs. Afzal and Shuja must plead two elements: (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived each of rights, privileges, or immunities secured by the Constitution or laws of the United States.[21]

The Doctors fail to plead a person acted under the color of state law.  The Board is a private entity.[22]  The Doctors must allege the Board acted under the color of state law.  Congress allows suits against private parties acting under color of state law where (1) the private party deprived the plaintiff of a constitutional right by exercising "a right or privilege having its source in state authority" and (2) where the private party may be "appropriately characterized as [a] 'state actor'" where the private party "is a state official, … has acted together with or has obtained significant aid from state officials, or [where his] conduct is otherwise chargeable to the State."[23]  To assist in this inquiry, the Supreme Court has articulated the "'public function' test, the 'close nexus' test[,] and the 'symbiotic relationship' test."[24]

The Doctors do not allege the Board exercised a right or privilege having its source in state authority or the Board is a state official, acted with a state official, or the Board's conduct is chargeable to the state.[25]  They instead broadly: compare states' medical licensing requirements – generally and without reference to a specific state – to the Board's certification requirements and imply the Board imposed stricter requirements than the states' medical licensing requirements;[26] allege Board certification is not required to practice medicine in the United States;[27] suggest the Board is not permitted to "determine competency or readiness for independent practice" or "require retraining in a residency program" under state or federal law;[28] and, allege the Board's policy requiring a physician to redo a residency program after a certain period of time without certification "overrides" the states' licensing function.[29]  They allege the Board's purportedly discriminatory and retaliatory requirements for certification "short circuited" Dr. Afzal's medical career, in part due to Dr. Afzal's purported inability to "obtain enrollment in Medicaid/Medicare."[30]  While the Doctors challenge the role of the Board in the medical field and disagree with un-named entities' requirement a physician be Board certified to

practice with the entity when the physician has a state-issued license, they fail to plead the Board is a state actor.[31]

III.    **Conclusion**

We dismiss with leave to timely amend if the Doctors can assert claims consistent with Federal Rule of Civil Procedure 11 and within our limited subject matter jurisdiction.[32]

---

[1] *See, e.g.* ECF Doc. No. 2.  The Doctors proceeding pro se do not plead in numbered paragraphs required by Federal Rule of Civil Procedure 10(b).  We are unable to cite to specific paragraphs of their pro se Complaint.  We instead cite to pages of the Complaint as paginated by CM/ECF.  The Doctors describe themselves at various times as "me."  We construe any reference to "me" as a reference to Dr. Afzal.

The Doctors do not adequately plead our subject matter jurisdiction under 28 U.S.C. § 1332 because they fail to plead their citizenship or the citizenship of the Board. ECF Doc. No. 2 at 2.  They seemingly try to assert federal question subject matter jurisdiction alleging a violation of their civil rights under 42 U.S.C. § 1983.

[2] ECF Doc. No. 2 at 3.

[3] *Id.*

[4] *Id.* at 5.  The Doctors attach an article from December 2020 discussing how the Kentucky Office of Bar Admissions notified fifteen law students they passed the bar but actually an error occurred and they did not pass the exam. The relevance Dr. Afzal's medical board certification exam results in 1996 is unclear.

[5] *Id.* at 6.  The Doctors attach a letter from the Board explaining Dr. Afzal could not take the 2016 Certification examination because he must have a valid, unrestricted, and unchallenged medical license to sit for the exam, but Dr. Afzal's license had been suspended and his DEA registration revoked due to a Medicare fraud conviction.

[6] *Id.* at 6–7.

[7] *Id.* at 6.

[8] *See, e.g.* ECF Doc. No. 2. Drs. Afzal and Shuja allege:

- "[The Board] is a private organization which is not subject to any oversight by any regulatory organization. [The Board] is acting as de facto absolute power to control the right to practice Medicine in United States and elsewhere." *Id.* at 3.
- "State Medical Boards require licensing of practicing physicians in USA. [Board] certification is NOT required for licensing in any US states but [the Board] is introducing its own regulation to exclude diverse doctors of minority origin." *Id.* at 3.
- "[The Board] has self made an expiration of eligibility rule wherein it creates an ineligibility determination which requires RETRAINING in the specialty for one year and only then can the physician take any kind of assessment whatsoever . . . Expiration of Eligibility to take any assessment is a new concept of discrimination which is NOT a feature of any State Medical Boards that license physicians in USA. State Medical Boards accept United States Medical Licensing examination USMLE 3 as meeting requirements for licensure. Once a physician is licensed there is no feature of Expiration of Eligibility as done by [the Board] which is NOT a state licensing Board. Each State Medical Board require renewal of license but there is no such thing as Expiration of Eligibility to take any exam. If state medical Board require physician can take Special Purpose Exam SPEX administered by USMLE Federation of State Medical Board FSMB." *Id.* at 4 (emphasis and grammatical errors in original).
- "[The Board] is not authorized under any state or Federal law to determine competency and readiness for independent practice at the current standards of training. This is the job of State Medical Boards to determine competency to practice if any deficiencies then State Medical Board require SPEX exam by USMLE/FSMB." *Id.* at 7.
- "[The Board] has no authority to order retraining in a residency program . . . [The Board] has sidelined my career as even Medicaid provider enrollment require Board certification status in spite of me being licensed in several US states." *Id.* at 9.
- "State Medical Boards . . . do not require RETRAINING in the medical specialty after a physician has been licensed once." *Id.* at 10.
- "[The Board's] policy of expiration of Eligibility of physician Exhibit 4 to take certifying exam violates my constitutional rights to be treated equally and fairly. This policy overrides the State Board of Medical Examiners of each state policy to determine competence to practice medicine independently according to prevailing standards . . . [The Board] has not been authorized to administer such a discriminatorily policy by any state laws whatsoever.  Licensing is jurisdiction of each State Medical Boards NOT [the Board]. State Medical Board require SPEX exam if needed to determine competency but FSMB never requires RETRAINING as [the Board] requires." *Id.* at 11–12 (emphasis and grammatical errors in original).
- "[The Board] continued actions have prevented me from obtaining enrollment in Medicaid/Medicare whatsoever short circuiting my medical career in spite of being licensed by State Medical Boards in New Jersey, Florida, Nevada, North Carolina and Illinois to name a few valid licenses." *Id.* at 12 (grammatical errors in original).

[9] *Id.* at 7, 11.  Dr. Afzal also claims the "10 year [old traditional] exam" "was designed to exclude diverse doctors who complain about any [Board] exam issues" and "[h]igh scores on 10 yr MOC are strongly correlated with socio economic status and tend to disadvantage Black Brown doctors who score significantly lower than their white peers." *Id.* at 7.

[10] *Id.* at 11.

[11] *Id.* at 9 ("My spouse Dr. Shahida Shuja has been financially destroyed as I am not able to enroll in the new Longitudinal assessment option to continue Board certification issues.").

[12] *Id.* at 12.

[13] *Id.* at 11–12.

[14] 28 U.S.C. § 1915(e)(2)(B).

[15] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

[16] *Id.* (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[17] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

[18] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[19] *Id.* (quoting *Mala*, 704 F.3d at 245).

[20] 42 U.S.C. § 1983.

[21] *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[22] *See* American Board of Internal Medicine, *https://www.abim.org/about/* (last visited Jan. 18, 2022) ("ABIM is a physician-led, non-profit, independent evaluation organization driven by doctors who want to achieve higher standards for better care in a rapidly changing world."); *Goussis v. Kimball,* 813 F. Supp. 352, 358 (E.D. Pa. 1993) ("Because ABIM is a private, non-profit unregulated entity which receives no state funds and which has not been delegated by the state any role in the licensing or regulation of professional conduct, and whose role only involves the preparation, administration, and grading of a test which, inter alia, is used by peers to determine recognition of high professional achievement (board certification), it is not a state actor and its conduct does not constitute state action for purposes of imposing liability under section 1983"); *see also Munsif v. Cassel,* 331 F. App'x 954, 959 (3d Cir. 2009) (citing to *Goussis* for proposition the Board is not a state actor under Section 1983 and finding plaintiff failed to allege the Board acted under the color of state law for claim the Board's tests have racial bias); *Alston v. Nat'l Conf. of Bar Examiners*, 314 F. Supp. 4 620, 625 (E.D. Pa. 2018) (dismissing constitutional claims for lack of state actor against the National Conference of Bar Examiners and comparing the same to the American Board of Internal Medicine, citing Judge Robreno's opinion in *Goussis* approvingly); *Am. Bd. of Internal Med. v. Von Muller*, No. 10-

2680, 2011 WL 857337, at *2–5 (E.D. Pa. Mar. 10, 2011), *aff'd* (3d Cir. Sept. 12, 2013) (relying on *Goussis*, finding *Goussis* indistinguishable, and dismissing counterclaim against the Board for constitutional violations).

[23] *Diamond v. Pa. State Educ. Assoc.*, 972 F.3d 262, 270-71, n.2 (3d Cir. 2020) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

[24] *Von Muller*, 2011 WL 857337, at *3 (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 801 (3d Cir. 2001)); *see also Jenkins v. Ne. Treatment Centers, Inc.,* No. 21-1421, 2021 WL 5227186, at *5 (E.D. Pa. Nov. 10, 2021) (discussing three "broad tests" to determine when state action exists).

[25] *See supra* note 22.

[26] *See, e.g.* ECF Doc. No. 2 at 3, 4, 10.

[27] *Id.* at 3.

[28] *Id.* at 7.

[29] *Id.* at 11–12.

[30] *Id.* at 12.

[31] *See, e.g. supra* note 22.

[32] The gravamen of this Complaint pertains to Dr. Afzal, with one allegation the Board harmed Dr. Shuja because her husband, Dr. Afzal, cannot practice medicine in the United States absent his Board certification.  Dr. Afzal's claim fails.  We lack subject matter jurisdiction over Dr. Shuja's derivative claim as it is dependent on Dr. Afzal stating a claim.