IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FIAZ AFZAL,** *et al* | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 22-86** |
| | : | |
| **AMERICAN BOARD OF INTERNAL MEDICINE** | : | |
| | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                       February 3, 2022

      We dismissed a pro se civil rights claim from Doctors Fiaz Afzal of Canada and his spouse Shahida Shuja against the American Board of Internal Medicine last month as frivolous consistent with Congress's mandate we screen a complaint after granting leave to proceed without paying the filing fees. The doctors sought compensation and an order requiring the Board to allow Dr. Afzal to take a different assessment test for certification. They broadly alleged a civil rights violation without pleading a state actor. We granted them leave to timely file an amended Complaint. Dr. Afzal alone responded with both an amended complaint and a fulsome "supplement" we must characterize as a second amended Complaint filed without leave. He again seeks compensation from the Board and an Order requiring the Board to allow him to take a new certification assessment. But he still fails to allege the Board is a state actor. We dismiss with prejudice as he has failed to plead a state actor after three attempts and further attempts are futile. He also fails to state an equal protection claim based on the Board's purportedly discriminatory policies. We dismiss his third attempt at pleading civil rights claims against the Board as frivolous consistent with Congress's mandate. We dismiss his constitutional claims against the Board filed without paying the filing fees with prejudice.

I.      **Alleged pro se facts**[1]

The American Board of Internal Medicine permits previously Board-certified physicians to take a Longitudinal Knowledge Assessment with more favorable "key features" to test-takers when seeking re-certification.[2] But the Board requires physicians take a different test if, like Dr. Afzal, they are seeking a new Board certification. Dr. Afzal characterizes this different test as the "old way of testing" which does not contain favorable "key features."[3]

Dr. Afzal concludes this different testing standard discriminates against him.[4] He alleges "[d]iscrimination based on color, religion was evident in Dismissed Medicaid case in Louisiana . . . so [the Board] is also discriminating against [Dr. Afzal] due to color and religion issues as there is no other explanation for [the Board's] refusal to let [him] take the [Longitudinal Knowledge Assessment] assessment [*sic*] in future for 5 years."[5]

The Board's "history of discrimination" against Dr. Afzal involves mixing up his results with another candidate's results in 1996 but refusing to acknowledge it, canceling his test in 2016 due to a criminal conviction he purports had already been expunged, and not providing him extra time during a test in 2019 when the fire alarm went off and he lost test-taking time.[6] The Board most recently refused Dr. Afzal's request to sit for examination in 2020 because his Board eligibility ended in 2019.[7]

Dr. Afzal also challenges the Board's function in the medical field, alleging it acts outside of its authority and/or with no authority in imposing certain requirements on its applicants to become Board certified and is acting as a state medical board with its requirements.[8] Dr. Afzal also now apparently challenges the Board's social media presence and influence on social media as well as its discussion of and involvement in the COVID-19 pandemic.[9]

**II.	Analysis**

Dr. Afzal alleges the Board is discriminating and retaliating against him by not allowing him to take the new exam with "favorable features" and by requiring he do additional residency training before he sits for the certifying exam again because his period of eligibility to become Board certified expired.[10] He alleges the Board is "introducing its own regulation to exclude diverse doctors it deems fit to exclude from participation in state Medicaid program,"[11] and then later alleges he is "being singled out by [the Board] to refuse entry to [Longitudinal Knowledge Assessment] at all. Discrimination based on color and religion was evident in Dismissed Medicaid case in Louisiana . . . so [the Board] is also discriminating against [him] due to color and religion issues as there is no other explanation for [the Board's] refusal to let [him] take the [Longitudinal Knowledge Assessment] in future for 5 years."[12] He alleges the Board's refusal deprives him of his constitutional rights "to be treated equally and fairly."[13] Dr. Afzal seeks "$1000,000 [*sic*] as compensation" and an order requiring the Board to allow him to take the new exam.[14]

We dismissed these claims last month because Dr. Afzal and his spouse did not plead a state actor potentially responsible for a civil rights violation. Dr. Afzal again fails to state a civil rights claim because he fails to allege the Board is a state actor possibly responsible for depriving civil rights. He also fails to state an equal protection claim challenging the facially neutral policies requiring different tests for physicians who are already certified as opposed to those who are not certified who must also undergo retraining following an expiration of Board eligibility before sitting for the certifying exam.[15]

Having previously granted Dr. Afzal leave to proceed *in forma pauperis*, Congress directs we dismiss a claim filed without paying fees which we find frivolous or malicious; fails

to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[16] When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B)(ii), we apply the same standard used under Federal Rule of Civil Procedure 12(b)(6).[17] We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiffs to determine whether they state a claim for relief plausible on its face.[18] We must be "mindful of our 'obligation to liberally construe a pro se litigant's pleadings …'"[19] We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[20] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."[21]

Congress provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted …."[22] Congress does not confer rights upon a plaintiff through section 1983. Rather, the civil rights law is the vehicle used to bring federal constitutional claims in federal court. To proceed, Dr. Afzal must plead two elements: (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived each of rights, privileges, or immunities secured by the Constitution or laws of the United States.[23] Dr. Afzal fails to plead either prong in his amended pleadings.

### A.     Dr. Afzal fails to plead the Board is a state actor.

We held the Board is a private entity in our first opinion.[24] Dr. Afzal acknowledges the Board is a private organization.[25] But he seemingly fails to understand what this means for his civil rights claim. Dr. Afzal must allege the Board acted under the color of state law and he fails to do so.

Congress allows suits against private parties acting under color of state law where (1) the private party deprived the plaintiff of a constitutional right by exercising "a right or privilege having its source in state authority" and (2) where the private party may be "appropriately characterized as [a] 'state actor'" where the private party "is a state official, … has acted together with or has obtained significant aid from state officials, or [where his] conduct is otherwise chargeable to the State."[26] To assist in this inquiry, the Supreme Court has articulated the "'public function' test, the 'close nexus' test[,] and the 'symbiotic relationship' test."[27]

Dr. Afzal still does not allege the Board exercised a right or privilege having its source in state authority or the Board is a state official, acted with a state official, or the Board's conduct is chargeable to the state.[28] Dr. Afzal fails to allege facts supporting a finding the Board is acting with state officials or state officials are working with the Board to such a degree to be recognized as a "joint participant" in the Board's conduct. The closest he gets to alleging a *fact* — not a legal conclusion — supporting a finding of state action is alleging the Board is requiring residency retraining, which state licensing boards also require to practice, and the Board seeks to determine physician competency. He alleges (really argues) the Board must then be a state actor because it requires something the state medical licensing boards require.[29] But this is still not enough. We are persuaded by the reasoning of our colleagues who confronted similar issues before us.[30]

5

In *Goussis*, Judge Robreno squarely confronted whether the American Board of Internal Medicine is a state actor on a motion for summary judgment.[31]  The plaintiff, a foreign born and trained physician, sued the Board for depriving him of due process and equal protection under the Fourteenth Amendment after he failed to pass the Board's qualifying exam for a subspeciality certification four times.[32]  The physician argued the Board "is a state actor because [the Board's] subspecialty certification examination is a prerequisite to 'hospital staff privileges' and 'professorship appointments at state medical schools.' Therefore, by allegedly controlling who passes or fails the subspecialty certification examination, [the Board] performs a regulatory function that is 'traditionally the exclusive prerogative of the state.'"[33]  Judge Robreno, in applying all three tests, found "[u]nder none of the tests, or combinations thereof, can it be said that [the Board] is a state actor and that its conduct constituted state action . . . Because [the Board] is a private, non-profit unregulated entity which receives no state funds and which has not been delegated by the state any role in the licensing or regulation of professional conduct, and whose role only involves the preparation, administration, and grading of a test, which, *inter alia*, is used by peers to determine recognition of high professional achievement (board certification), it is not a state actor and its conduct does not constitute state action for purposes of imposing liability under Section 1983."[34]

Our Court of Appeals, citing Judge Robreno's decision in *Goussis*, affirmed Chief Judge Sanchez's dismissal of a complaint alleging the Board's re-certification tests have racial bias because the plaintiff made "no allegation from which we can infer that the defendants, individual or as agents of the Board, acted under the color of state law."[35]  And former Chief Judge Joyner, also relying on Judge Robreno's reasoning in *Goussis*, found the physician in *Von Muller* failed to state a counterclaim against the Board when she alleged the Board deprived her of due process

6

in violation of the Fourteenth Amendment by suspending her Board certification without notice.[36] Judge Joyner found the physician alleged "no facts . . . that would indicate that [the Board] was fulfilling a state function, standing in the state's shoes or in a symbiotic relationship with a state when it revoked [the physician's] board certification."[37] Judge Joyner also reasoned our Court of Appeals "and a number of fellow district court judges in this circuit have observed that 'the evaluation and accreditation of medical education in this country is neither a traditional nor exclusive state function.'"[38] Judge Joyner found the case not "substantively distinguish[able]" from *Goussis* and thus found Judge Robreno's analysis "highly persuasive" in reaching the conclusion the Board is not a state actor.[39]

We are equally persuaded by Judge Robreno's opinion in *Goussis* and find Dr. Afzal fails to adequately plead the Board is a state actor. But even if he did, he also fails to plead an equal protection claim.

### B.   Dr. Afzal fails to plead an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment demands, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."[40]

#### 1.   Dr. Afzal does not show the Equal Protection Clause applies to him.

As a threshold matter it is unclear whether Dr. Afzal is afforded protection under the Fourteenth Amendment Equal Protection Clause as an individual residing in Canada with no plead connection to the United States, including whether he is a United States citizen or he resided in the United States at the time the Board required retraining before sitting for an additional exam and denying him access to the new Longitudinal Knowledge Assessment. The Fourteenth Amendment prohibits states from discriminating against any person within its jurisdiction.

7

This area of the law is unclear as it relates to non-resident aliens claiming protection under the Fourteenth Amendment. The Supreme Court directs the "[u]se of the phrase 'within its jurisdiction' thus does not detract from, but rather confirms, the understanding that the protection of the Fourteenth Amendment extends to anyone, citizen or stranger, who is subject to the laws of a State, and reaches into every corner of a State's territory. That a person's initial entry into a State, or into the United States, was unlawful, and that he may for that reason be expelled, cannot negate the simple fact of his presence within the State's territorial perimeter. Given such presence, he is subject to the full range of obligations imposed by the State's civil and criminal laws. And until he leaves the jurisdiction—either voluntarily, or involuntarily in accordance with the Constitution and laws of the United States—he is entitled to the equal protection of the laws that a State may choose to establish." [41]

We have no basis to conclude Dr. Afzal is within a state's jurisdiction to be afforded equal protection of the laws. We do not dismiss on this ground today other than recognizing Dr. Afzal files this suit from Canada challenging the equal protection of a state's laws.

### 2.  Dr. Afzal does not plead an equal protection claim.

Even if he could plead a state actor, we must dismiss after three attempts because Dr. Afzal also fails to plead an equal protection claim. He fails to plead intentional discrimination or similarly situated individuals.

Dr. Afzal seemingly posits two theories of discrimination: (1) the Board requiring him to take the traditional exam, instead of the new exam, to obtain certification; and (2) the Board requiring he do additional residency training before retaking the certification exam because his period of eligibility to be Board certified expired. He explicitly pleads the Board discriminates against him based on his race and religion by not allowing him to take the new assessment.[42] He

does not, however, allege the Board's requirement he be retrained through a residency because his eligibility expired is at all tied to his race or religion—*i.e.* he does not allege the Board's decision on this basis is tied to a protected class.[43] We apply different standards to each claim. We begin with his allegations regarding the new as opposed to the old testing requirement.

Dr. Afzal claims the Board is discriminating against him based on his race and religion by requiring he take the old exam while physicians who are already Board certified can take a more favorable exam. He pleads the new exam is available to physicians "who are already certified by" the Board while new certification "still requires the old way of testing [by taking the] Traditional 10 year MOC exam."[44] He continues: "New examination option should be available to all fully licensed physicians irrespective whether first time new certification or recertification issues or expired/lapsed certification. To allow Longitudinal evaluation LKA to one set of licensed physicians and denying to another set of licensed physicians should be declared discriminatory policy that violates the rights of licensed physicians under the constitution and laws of US."[45] He also pleads the old exam he must take "was designed to exclude diverse doctors who complain about any [Board] exam issues."[46]

To state an equal protection claim, Dr. Afzal "must allege (and ultimately prove) 'intentional discrimination.'"[47] Intentional discrimination can be shown when "(1) a law or policy explicitly classifies citizens on the basis of race [or religion]. . . (2) a facially neutral law or policy is applied differently on the basis of race [or religion]. . . (3) a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially [or religious] discriminatory impact."[48] The Board's policy is not facially discriminatory based on race or religion. Dr. Afzal pleads the law is facially neutral requiring all physicians seeking a new Board certification take the old test and all physicians seeking re-certification may take the

9

new one. Dr. Afzal also fails to plead facts supporting the Board is applying the facially neutral policy differently based on race or religion. He merely pleads a single legal conclusion the Board is discriminating against him based on his race and religion by making him take the old exam but undercuts his own theory by pleading the Board is making *all* physicians, including him, seeking a new certification take the old exam, not just him or those similarly situated as him based on race and religion. Dr. Afzal finally fails to plead facts supporting the Board is motivated by discriminatory intent and the facially neutral policy is causing a discriminatory impact based on race or religion. The closest he gets to pleading a fact supporting this theory is pleading the old exam excludes diverse doctors. This conclusory pleading is alone insufficient. He pleads no facts the Board has discriminatory intent by requiring physicians seeking a new certification take the old exam. He fails to state an equal protection claim under his first theory.[49]

Dr. Afzal also pleads the Board is discriminating against him by requiring he complete another residency before sitting for the certification exam because his period of eligibility expired. This claim must be based on a "class-of-one theory" because Dr. Afzal does not allege the Board is discriminating against him based on his status as a member of a protected class.[50] Dr. Afzal must allege: "(1) the [Board] treated him differently from others similarly situated, (2) the [Board] did so intentionally, and (3) there was no rational basis for the difference in treatment."[51] Dr. Afzal pleads no facts about similarly situated individuals nor does he plead the Board treated him differently than those similarly situated. He fails to plead the Board discriminated against him intentionally. He again pleads the Board has a policy requiring a physician to be retrained after his or her eligibility to be Board certified expires, his eligibility expired, and the Board is requiring he be retrained before sitting for another certification exam.

10

He pleads the Board should not be allowed to have this requirement because state medical boards do not impose it. He concludes this requirement violates his "constitutional rights to be treated equally and fairly" as a matter of legal conclusion. He offers no fact basis for his legal conclusion. He does not state a claim.

Dr. Afzal fails to state an equal protection claim against the Board.

### III.     Conclusion

Dr. Afzal's second amended complaint filed without leave fails to state a claim. He fails to plead the Board is a state actor. He instead pro se complains about the Board's social media "regulation" of medical content, the SATs, requirements for lawyers, and physician shortages with no conceivable relevance to his claims here. He discusses the Board's "history of discrimination" and "retaliation" against him but in his claim for relief only seeks redress for the Board's policies requiring he take the old certifying exam and be retrained before taking it again. Dr. Afzal challenges the Board's existence and its impact on his ability to practice medicine. But he pleads other non-parties' requirements he be Board certified are his true impediment to practice. Rather than challenging the non-party's requirements about Board certification when he purportedly holds valid state licenses, he continues to sue the Board alleging its facially neutral policies requiring non-certified physicians take a different exam than previously certified ones and imposing a retraining requirement on all candidates who are not certified within a specific period discriminate against him. He pleads the Board requiring he take the old test discriminates against him based on race and religion. He does not allege the Board's retraining requirement is tied to a protected class. He merely concludes this requirement is discriminatory and deprives him of his "constitutional right to be treated equally and fairly."

Dr. Afzal fails to plead a state actor in his third attempt. He fails to show he is entitled to the protections of the Fourteenth Amendment's Equal Protection Clause and otherwise fails to plead an equal protection claim. We dismiss Dr. Afzal's second amended Complaint with prejudice.

---

[1] Dr. Afzal fails to provide a redline of his Complaint and amended Complaint or the amended Complaint and supplement thereto consistent with our Policies and Procedures. Dr. Afzal is also not permitted to file a supplement to his amended Complaint, which appears to largely recite the same allegations in the amended Complaint, without leave which he does not request. Fed. R. Civ. P. 15(a)(2). Because Dr. Afzal is pro se, we accept and review the last-filed supplement to his amended Complaint as the operative pleading. We construe it as a second amended Complaint. But we note Dr. Afzal's failure to follow the operative rules is problematic. For example, Dr. Afzal attaches exhibits to his amended Complaint, beginning at Exhibit 15. *See, e.g.*, ECF Doc. Nos. 8-1–8-2. He fails to attach the earlier exhibits he references in his amended Complaint. *See, e.g.*, ECF Doc. Nos. 8–8-2. He attaches no exhibits to his supplement to his amended Complaint despite several references to exhibits. We dismissed his Complaint and cannot consider the exhibits attached to it in assessing his later pleadings. But the exhibits do not change our analysis in any event.

[2] ECF Doc. No. 9 ¶ 3.

[3] *Id.* Dr. Afzal labels it the "Traditional 10 year MOC exam." *Id.*

[4] *Id.* ¶ 4.

[5] *Id.* ¶ 5.

[6] *Id.* ¶ 5.

[7] *Id.*

[8] *See, e.g.,* ECF Doc. No. 9. Dr. Afzal alleges:
- "[The Board] is a private organization which is not subject to any oversight by any organization. [The Board] is acting as de facto absolute power to control the right to practice Medicine in United States and Canada." *Id.* ¶ 1.
- "Canada [O]ntario requires Board Certification as requirement for Licensure . . . State Medical Boards in United States require licensing of practicing physicians in USA. [Board] certification is NOT required for licensing in any US states but [the Board] is introducing its own regulation to exclude diverse doctors it deems fit to exclude from participation in state Medicaid program." *Id.* ¶ 2.
- "[The Board] has self made an expiration of eligibility rule wherein it creates an ineligibility determination which requires RETRAINING in the specialty for one year

and only then can the physician take any kind of assessment whatsoever. Expiration of Eligibility to take any assessment is a new concept of discrimination which is NOT a feature of any State Medical Boards that license physicians in USA. State Medical Boards accept United States Medical Licensing examination USMLE 3 as meeting requirements for licensure. Once a physician is licensed after completing minimum of one year of postgraduate residency training there is no feature of Expiration of Eligibility as done by [the Board] which is NOT a state licensing Board but is certainly acting as a state actor. Each State Medical Board require renewal of license but there is no such thing as Expiration of Eligibility to take any exam. If state medical Board require physician can take Special Purpose Exam SPEX administered by USMLE Federation of State Medical Board FSMB." *Id.* ¶ 4 (emphasis and grammatical errors in original).

- "[The Board] is acting under color of state law to deprive [Dr. Afzal] right, privileges or immunities secured by the constitution or laws of US. The private [Board] is exercising its authority that have its source in state Medical Board. New York and California determine competency or readiness for independent practice by requiring one year post graduate training in same postgraduate program that is required by State medical boards. [The Board] is requiring retraining which is State Medical Boards requirement so [the Board] is acting under color of state law to deprive [Dr. Afzal] of ability to participate in New Jersey Medicaid program. [The Board] is private entity trying to act as a state actor by its conduct requiring postgraduate residency training which is otherwise chargeable to State Medical Boards New York, California for example." *Id.* ¶ 4 (emphasis and grammatical errors in original).

- "[The Board's] retaliatory discriminative policies mimic state Medical Boards action requiring retraining after Dr. Afzal has been licensed by New Jersey Board since 1996 with no Board actions at all." *Id.* ¶ 5.

- "[The Board] is not authorized under any state or Federal law to determine competency and readiness for independent practice at the current standards of training . . . This is the job of State Medical Boards to determine competency to practice if any deficiencies then State Medical Board require SPEX exam by USMLE/FSMB . . . What gives [the Board] authority to ask for retraining in postgraduate training after Dr. Afzal has been licensed in New Jersey for more than 26 years now with a clear record in Florida . . . If [the Board] is requiring retraining then it is definitely acting as a state actor, e.g. New Jersey Board of Medical Examiners." *Id.* ¶ 6.

- "[The Board] is retaliating against me for the mistakes that [the Board] does not admit Changing scores, mixing up results of two candidates and refusing to follow its own regulation by not allowing re examination option as explained. There is clear discrimination between those who opt to take 10 year MOC exam and Longitudinal LKA assessment . . . The 10 year MOC exam was designed to exclude diverse doctors who complain about any [Board] exam issues." *Id.* ¶ 7.

- "[The Board] has no authority to order retraining in a residency program . . . [The Board] has sidelined by career as even New Jersey Medicaid provider enrollment require Board certification status in spite of me being licensed in several US states . . . [The Board] is not used by peers to determine recognition of high professional achievement but [Board] certification or eligibility letter is requirement of State Medicaid and Medicare provider enrollment. Inspite [*sic*] of being licensed by several US states with NO disciplinary

13

- action at all by New Jersey Board . . . [Dr. Afzal] is being deprived of participation in New Jersey Medicaid program and denied Medicare enrollment in New Jersey." *Id.* ¶ 8. (grammatical errors and emphasis in original).
- "[The Board's] policy of expiration of Eligibility of physician to take certifying exam violates my constitutional rights to be treated equally and fairly. This policy overrides the State Board of Medical Examiners of each state policy to determine competence to practice medicine independently according to prevailing standards. [The Board] has not been authorized to administer such a discriminatorily policy by any state laws whatsoever. Licensing is jurisdiction of each State Medical Boards NOT [the Board]. Florida Health or New Jersey Board has not required [Dr. Afzal] to undergo any retraining issue at all. [The Board's] continued actions have prevented me from obtaining enrollment in New Jersey Medicaid/Medicare whatsoever short circuiting my medical career in spite of being licensed by State Medical Boards in New Jersey, Florida, Nevada, North Carolina and Illinois to name a few valid licenses." *Id.* at 14 (Relief Requested).

[9] *Id.* ¶ 4 ("[The Board] community engagement is trying to regulate the medical content on social media as shown by survey sent to Dr[.] Afzal . . . [The Board] is not only acting as state actor it is trying to regulate medical content on social media also. [the Board] certainly doesnot [*sic*] have any authority to regulate medical content on social media but it is planning to do so . . . How can [the Board] regulate such research issues when it has no research regulatory authority at all. Only State Board of Medical Examiners are authorized to investigate physician conduct relating to COVID 19 unproven treatments or conduct of sharing unverified medical information about covid vaccines or physician conduct of false exemptions for mask wearing or exemption from receiving covid 19 vaccines . . . [The Board] is trying to assume this state actor role by regulatory measures to control media content.").

[10] *Id.*

[11] *Id.* ¶ 2.

[12] *Id.* ¶ 5.

[13] *Id.* at 14 (Relief Requested); *see also id.* at 2 (Basis for Jurisdiction) (alleging "[t]his complaint seeks redress for constitutional violation including denial of equal protection under Fourteenth Amendment.").

[14] *Id.* at 15 (continuing "[n]ew examination option should be available to all fully licensed physicians irrespective whether first time new certification or recertification issues or expired/lapsed certification.").

[15] Dr. Afzal again pleads we have subject matter jurisdiction under 28 U.S.C. § 1332. But Dr. Afzal still fails to plead his or the Board's citizenship. *See* ECF Doc. No. 9 at 2 (merely pleading Dr. Afzal is in Canada, but not his citizenship or residence, and merely pleading the American Board of Internal Medicine is "in Philadelphia" but not its citizenship within the meaning of determining subject matter jurisdiction under 28 U.S.C. § 1332). But we may exercise subject

14

matter jurisdiction under 28 U.S.C. § 1331 because he attempts to plead a federal question under 42 U.S.C. § 1983.

[16] 28 U.S.C. § 1915(e)(2)(B).

[17] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

[18] *Id.* (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[19] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

[20] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[21] *Id.* (quoting *Mala*, 704 F.3d at 245).

[22] 42 U.S.C. § 1983.

[23] *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[24] *See* American Board of Internal Medicine, *https://www.abim.org/about/* (last visited Jan. 18, 2022) ("ABIM is a physician-led, non-profit, independent evaluation organization driven by doctors who want to achieve higher standards for better care in a rapidly changing world."); *Goussis v. Kimball,* 813 F. Supp. 352, 358 (E.D. Pa. 1993) ("Because ABIM is a private, non-profit unregulated entity which receives no state funds and which has not been delegated by the state any role in the licensing or regulation of professional conduct, and whose role only involves the preparation, administration, and grading of a test which, inter alia, is used by peers to determine recognition of high professional achievement (board certification), it is not a state actor and its conduct does not constitute state action for purposes of imposing liability under section 1983"); *see also Munsif v. Cassel,* 331 F. App'x 954, 959 (3d Cir. 2009) (citing to *Goussis* for proposition the Board is not a state actor under Section 1983 and finding plaintiff failed to allege the Board acted under the color of state law for claim the Board's tests have racial bias); *Alston v. Nat'l Conf. of Bar Examiners*, 314 F. Supp. 3d 620, 625 (E.D. Pa. 2018) (dismissing constitutional claims for lack of state actor against the National Conference of Bar Examiners and comparing the same to the American Board of Internal Medicine, citing Judge Robreno's opinion in *Goussis* approvingly); *Am. Bd. of Internal Med. v. Von Muller*, No. 10-2680, 2011 WL 857337, at *2–5 (E.D. Pa. Mar. 10, 2011), *aff'd* (3d Cir. Sept. 12, 2013) (relying on *Goussis*, finding *Goussis* indistinguishable, and dismissing counterclaim against the Board for constitutional violations).

[25] ECF Doc. No. 9 ¶ 1.

15

---

[26] *Diamond v. Pa. State Educ. Assoc.*, 972 F.3d 262, 270–71, n.2 (3d Cir. 2020) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

[27] *Von Muller*, 2011 WL 857337, at *3 (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 801 (3d Cir. 2001)); *see also Jenkins v. Ne. Treatment Centers, Inc.,* No. 21-1421, 2021 WL 5227186, at *5 (E.D. Pa. Nov. 10, 2021) (citing *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)) ("To further clarify the line between state and private actors, the Third Circuit recognizes three broad tests to determine when state action exists: (1) whether the private actor has exercised 'powers that are traditionally the exclusive prerogative of the state' (the 'public function test'); (2) whether the private actor has acted 'in concert with state officials' (the 'close nexus test'); and (3) whether the State has 'so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity' (the 'symbiotic relationship test').").

[28] *See supra* note 24.

[29] ECF Doc. No. 9 ¶¶ 4, 6.

[30] *See supra* note 26.

[31] *Goussis,* 813 F. Supp. at 356–58.

[32] *Id.* at 353–54.

[33] *Id.* at 356.

[34] *Id.* at 357–58.

[35] *Munsif,* 331 F. App'x at 959. There, the plaintiff sued officers of the Board rather than the Board itself.

[36] *Von Muller*, 2011 WL 857337, at *2–5.

[37] *Id.* at *4.

[38] *Id.*
[39] *Id.* at *5.

[40] U.S. Const. amend. XIV, § 1.

[41] *Plyler v. Doe*, 457 U.S. 202, 215 (1982) (emphasis added); *see also United States v. Verdugo-Urquidez,* 494 U.S. 259, 270–71 (1990) (addressing whether defendant may invoke the Fourth Amendment as a Mexican citizen when the search occurred in Mexico but defendant had been arrested and taken to the United States a few days before the search, and the Court noting "Verdugo–Urquidez also relies on a series of cases in which we have held that aliens enjoy

16

certain constitutional rights . . . These cases, however, establish only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country.")); *Veiga v. World Meteorological Org.*, 568 F. Supp. 2d 367, 373 (S.D.N.Y. 2008), *aff'd sub nom. Veiga v. World Meteorological Org.*, 368 F. App'x 189 (2d Cir. 2010) (applying *Verdugo* to case in which plaintiff invoked Fifth and Fourteenth Amendment protections as "a citizen of Portugal and Italy" but rejecting plaintiff could bring claims because plaintiff proffered "no evidence of any connection to the United States," employer outside of United States, and conduct occurred outside of the United States); *Estate of Kim Ha Ram v. Ride the Ducks of Seattle, LLC*, No. 15-1929, 2016 WL 6071363, at *3 n.6 (W.D. Wash. Oct. 17, 2016) (noting plaintiffs failed to identify any cases where a court extended protections of Fourteenth Amendment to non-resident aliens); *United States v. Koch,* 2011 WL 284485 (W.D. Pa. Jan. 25, 2011) (finding German national residing in Germany awaiting criminal trial is not entitled to Sixth Amendment speedy trial protection or any other constitutional protection while outside of the United States).

[42] ECF Doc. No. 9 ¶ 5 ("Why is the plaintiff being singled out by [the Board] to refuse entry to LKA assessment at all. Discrimination based on color, religion was evident in Dismissed Medicaid case in Louisiana . . . so [the Board] is also discriminating against plaintiff due to color and religion issues as there is no other explanation for [the Board's] refusal to let plaintiff take LKA assessment in future for 5 years"); ¶ 7 ("There is clear discrimination between those who opt to take 10 year MOC exam and Longitudinal LKA assessment . . . The 10 year MOC exam was designed to exclude diverse doctors who complain about any [Board] exam issues.").

[43] *See, e.g.*, ECF Doc. No. 9 ¶ 4 ("Expiration of Eligibility to take any assessment is a new concept of discrimination which is NOT a feature of any State Medical Boards that license physicians in USA.").

[44] *Id.* ¶ 3.

[45] *Id.* at 15 (Relief Requested).

[46] *Id.* ¶ 7.

[47] *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016) (citing *Washington v. Davis*, 426 U.S. 229, 241 (1976) (further citation omitted)).

[48] *Doe v. Lower Merion School Dist.*, 665 F.3d 524, 543 (3d Cir. 2011) (further citation and quotation omitted); *see also Hassan*, 804 F.3d at 294 (reciting three theories to prove intentional discrimination).

[49] *See, e.g.*, *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 118 (3d Cir. 2017) (upholding dismissal when plaintiff alleged he is African American and the prison had different policies relating to the purchase of guitars versus keyboard but failing to allege any facts supporting a finding race a substantial factor in the different treatment alleged.").

---

[50] *See Greco v. Senchak,* 627 F. App'x 146, 149 (3d Cir. 2015) ("Greco has not claimed to be a member of a protected class. Therefore, his claim must be premised on a 'class-of-one' theory."). Even if Dr. Afzal plead the Board's policy discriminated against him based on his race and religion, his claim would fail for the same reasons his claim under his first theory fails as he alleges no facts supporting a finding of intentional discrimination based on race or religion under any of the three theories.

[51] *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). "Pleading a plausible allegation of intentional discrimination is vital because such action is required for any violation of the Equal Protection Clause." *Greco*, 627 F. App'x at 149 (citing *Washington*, 426 U.S. at 239–40)).